GARCIA-MENDOZA & SNAVELY
EVA GARCIA-MENDOZA, ESQ.
NEVADA BAR NO:  1779
LUTHER SNAVELY, ESQ.
NEVADA BAR NO. 5507
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
     (702) 384-8484
ATTORNEY FOR DEFENDANT

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| JANICE BATES,<br><br>                Plaintiff,<br><br>vs.<br><br>CLARK COUNTY,<br><br>                Defendant. | CV-S-04-0518-KJD(GWF) |

## MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Defendant, Clark County, by and through its attorneys, Eva Garcia-Mendoza, Esq. and Luther Snavely, Esq. of the law firm of GARCIA-MENDOZA & SNAVELY, CHTD, and respectfully requests that Summary Judgment be entered in its favor because the pleadings and other attached documentary evidence show that there is no genuine issue as to any material fact and that the Defendant is entitled to judgment as a matter of law.

LAW OFFICES OF
GARCIA-MENDOZA & SNAVELY CHTD.
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8484 FAX (702) 384-0207

## STATEMENT OF MATERIAL FACTS

Pursuant to LR 56-1, the following are facts material to the disposition of this motion.

The Plaintiff, Janice Bates is an African-American female. (SEE DEPO OF BATES, p.23 AT ATTACHED EXHIBIT 1)

The Plaintiff began working for Clark County in 1996 as an Office Assistant in the Equal Opportunity Division(EOD). (SEE DEPO OF BATES, pp.20-21 AT ATTACHED EXHIBIT 1) She worked in that capacity for approximately six months before being promoted to Office Specialist in 1997. (SEE DEPO OF BATES, pp. 21-22 AT ATTACHED EXHIBIT 1)

As an Office Specialist, the Plaintiff was responsible for ordering and tracking all of the office supplies. She would fill in form letters for the analysts and she would do receptionist duties. Her duties included typing, filing, answering the telephones, talking to customers in person and on the telephone, keeping the EOD Manager's calendar and doing the travel coordination. (SEE DEPO OF BATES, p.23 AT ATTACHED EXHIBIT 1)

The Plaintiff worked as an Office Specialist in the Equal Opportunity Division from 1997 until she was promoted to Administrative Secretary in the Family Support Division on October 3, 2002. (SEE DEPO OF BATES, p.22 AT ATTACHED EXHIBIT 1, and AFFIDAVIT OF VISCONTI, paras. 9 and 40, AT EXHIBIT 2)

On July 1, 1998, George Cotton, Manager of Clark County's Equal Opportunity Division, filed a Charge of Discrimination against Clark County with the Nevada Equal

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

2

1  Rights Commission and the Equal Employment Opportunity Commission.  (SEE

2  EXHIBIT 3)

3      On September 2, 1998, George Cotton filed a Complaint in the U.S. District

4  Court of Nevada against Clark County and other individual Defendants in **Cotton v.**

5

6  **Askew et. al., CV-S-98-1245-JLQ(RJJ)** alleging causes of action for Race

7  Discrimination, Age Discrimination, Retaliation, violations of civil rights and various

8  state law claims.

9      In July of 1999, Beverly Glode, Director of the Department of Human Resources,

10  requested and received approximately five(5) reclassifications for Human Resources

11  jobs and another approximately four or five competitive promotions for Human

12  Resources employees with all of the attendant increases in salary which those

13  reclassifications and promotions entailed. (SEE AFFIDAVIT OF VISCONTI, para. 12,

14

15  AT EXHIBIT 2)

16      By January of 2000, the Manager of the Equal Opportunity Division was still

17  George Cotton.  (SEE AFFIDAVIT OF VISCONTI, para. 7, AT EXHIBIT 2)

18      The Equal Opportunity Division was a division within the Department of Human

19

20  Resources.  (SEE AFFIDAVIT OF VISCONTI, para. 6, AT EXHIBIT 2)

21      The Director of the Department of Human Resources at that time was Beverly

22  Glode.  (SEE AFFIDAVIT OF VISCONTI, para. 5, AT EXHIBIT 2)

23      During the same time period, Raymond Visconti was employed as Assistant

24  Director in the Department of Human Resources. (SEE AFFIDAVIT OF VISCONTI,

25  para. 3, AT EXHIBIT 2) The Department of Human Resources was a department which

26

27  fell under the authority of Michael Alastuey, Assistant County Manager.  (SEE

28  AFFIDAVIT OF VISCONTI, para. 4, AT EXHIBIT 2)

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

3

1   Mr. Alastuey had final authority over all job reclassifications and promotions

2   within the Department of Human Resources.  (SEE AFFIDAVIT OF VISCONTI, para. 4,

3   AT EXHIBIT 2)

4   By early 2000, Mr. Alastuey became unhappy with Beverly Glode due to the

5   large number of reclassifications and promotions within the Department of Human

6   Resources.  Mr. Alastuey believed that the budget for salary expense in the Human

7   Resources Department was excessive.  (SEE AFFIDAVIT OF VISCONTI, para. 13, AT

8   EXHIBIT 2)

9

10   On or around January 12, 2000, George Cotton attempted to obtain

11   reclassification funding for the Equal Opportunity Division pursuant to a supplemental

12   budget request. (SEE AFFIDAVIT OF VISCONTI, para. 14, AT EXHIBIT 2)

13   On or around January 27, 2000, George Cotton submitted a formal written

14   Position Reclassification Request asking that the Office Specialist position held at the

15   time by the Plaintiff be reclassified to Administrative Secretary.  (SEE AFFIDAVIT OF

16   VISCONTI, para. 15, AT EXHIBIT 2)

17

18   On February 15, 2000, the Finance Department noted that no funding source for

19   the reclassification was identified as is required for requests for reclassification.  (SEE

20   AFFIDAVIT OF VISCONTI, para. 16, AT EXHIBIT 2)

21

22   On February 18, 2000, George Cotton submitted an addendum to the

23   reclassification request wherein he purported to identify a funding source. (SEE

24   AFFIDAVIT OF VISCONTI, para. 17, AT EXHIBIT 2)

25

26

27

28

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

1    On or around March 1, 2000, Beverly Glode approved the request for the

2  individual reclassification proposal for the Plaintiff and sent it to Michael Alastuey for his

3  approval. (SEE AFFIDAVIT OF VISCONTI, para. 18, AT EXHIBIT 2)

4    On April 20, 2000, the Honorable Senior U.S. District Judge Justin L.

5
   Quackenbush entered Summary Judgment in favor of all of the Defendants and
6

7  dismissed George Cotton's Complaint in its entirety.  Mr. Cotton appealed to the Ninth

8  Circuit. **Cotton v. Askew et. al., CV-S-98-1245-JLQ(RJJ)**

9    In early August of 2000, Mr. Visconti had a meeting with Mr. Alastuey in which

10  Mr. Alastuey instructed Mr. Visconti to deny any and all reclassifications for the

11
   Department of Human Resources.  Mr. Alastuey told Mr. Visconti that the purpose of
12

13  his decision was to slow down the overall increase in salaries within Human

14  Resources, which he regarded as too high.  In fact, no one from the Department of

15  Human Resources received a job reclassification at this time and neither did Justice

16  Court or the Coroner's Office. (SEE AFFIDAVIT OF VISCONTI, paras. 19 and 20, AT

17  EXHIBIT 2)

18
     George Cotton had allowed the Plaintiff, starting in 1997 or 1998, to teach new-
19

20  employee orientation classes for all new Clark County and University Medical

21  Center(UMC) employees on the topics of sexual harassment, diversity and

22  discrimination even though it was outside her job description as an Office Specialist.

23  (SEE AFFIDAVIT OF VISCONTI, para. 23, AT EXHIBIT 2)

24     In 2001, Mr. Visconti had discussions with the Plaintiff and others regarding his

25
   concern that Office Specialists might not be qualified to teach such classes.  (SEE
26

27  AFFIDAVIT OF VISCONTI, para. 24, AT EXHIBIT 2)

28

1   On March 30, 2001, the Plaintiff filed her Charge of Discrimination directly with

2   the Equal Employment Opportunity Commission(EEOC) claiming that the Defendant

3   unlawfully retaliated against her in violation of Title VII. (SEE EXHIBIT 4; and DEPO

4   OF BATES, pp. 25-27 AT ATTACHED EXHIBIT 1)

5

6   On August 28, 2001, the Ninth Circuit Court of Appeals affirmed the decision of

7   the District Judge in its entirety. **Cotton v. Clark County, 17 Fed. Appx. 659 (9th Cir.**

8   **2001)**

9   Later in 2001, Mr. Visconti decided to leave it up to the Plaintiff whether she

10  wanted to continue teaching the training classes or not.  Neither Mr. Visconti nor

11  anyone else in Clark County management, removed the training classes from the

12  Plaintiff at that time.  Instead, Mr. Visconti spoke to the EOD staff in reference to

13  gradually transitioning all training from EOD to the Training Center.  (SEE AFFIDAVIT

14  OF VISCONTI, para. 25, AT EXHIBIT 2; DEPO OF BATES, p.50 AT ATTACHED

15  EXHIBIT 1)

16

17  For most of 2001, Shawna Dudas, an employee in EOD who worked on

18  discrimination issues occurring at UMC, had her position paid for out of the UMC

19  special fund. (SEE AFFIDAVIT OF VISCONTI, para. 26, AT EXHIBIT 2)

20

21  During 2001-2002 and continuing to this day, Clark County has an agreement

22  with UMC that UMC funds certain positions wherein the Clark County employee does

23  work concerning Title VII issues, i.e. EOD work, occurring at  UMC.  The fund is known

24  as the "UMC special fund."  (SEE AFFIDAVIT OF VISCONTI, para. 27, AT EXHIBIT 2)

25  In late 2001, Barbara King, the Manager of the Employee Relations Division,

26  came to Mr. Visconti and asked him to make arrangements for Shawna Dudas to be

27

28

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, II Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8484   FAX (702) 384-0247

1 transferred back to her office under Ms. King.  Ms. Dudas had worked for Ms. King in

2 the past.  (SEE AFFIDAVIT OF VISCONTI, para. 30, AT EXHIBIT 2)

3      In order to comply with Ms. King's request, Mr. VIsconti switched Ms. Dudas

4 back to the general fund because, in her capacity as an employee within the Employee

5

6 Relations Division, Ms. Dudas would not be doing any more EOD work for UMC.

7 Accordingly, Mr. Visconti could no longer justify having her salary paid out of the UMC

8 special fund.  (SEE AFFIDAVIT OF VISCONTI, para. 31, AT EXHIBIT 2)

9      Prior to the switch in funding source, some of the Plaintiff's job duties involved

10 her doing work concerning EOD issues at UMC.  (SEE AFFIDAVIT OF VISCONTI,

11 para. 32, AT EXHIBIT 2)

12      Therefore, Mr. Visconti switched the funding for the Plaintiff's position from the

13 general fund to the UMC special fund because the Plaintiff was continuing to do EOD

14

15 work for UMC.  (SEE AFFIDAVIT OF VISCONTI, para. 33, AT EXHIBIT 2)

16      On April 12, 2002,  the Plaintiff filed an Amended Charge of Discrimination

17 directly with the Equal Employment Opportunity Commission(EEOC) claiming that the

18 Defendant unlawfully retaliated against her and discriminated against her on account of

19 her race in violation of Title VII. (#1) (SEE ALSO EXHIBIT 5)

20

21      The Plaintiff  was promoted to Administrative Secretary in the Family Support

22 Division on October 3, 2002.  (SEE AFFIDAVIT OF VISCONTI, para. 40, AT EXHIBIT

23 2)

24      On April 27, 2004, the Plaintiff filed the Complaint alleging violation of Title VII

25 for Retaliation and Disparate Treatment Racial Discrimination which is now before this

26

27 Court. (#1)

28

7

# ARGUMENT

## PLAINTIFF'S COMPLAINT

In her Complaint(#1) and the Amended Charge of Discrimination to the Equal Employment Opportunity Commission which the Plaintiff attaches to her Complaint, the Plaintiff alleges that:

1. the Defendant denied her a job reclassification on August 23, 2000, "in retaliation for my association with the former Director of Equal Opportunity, who filed an EEOC charge of discrimination in violation of Title VII of the Civil Rights Act of 1964...." ;

2. the Defendant denied her a job reclassification on March 14, 2001, "in retaliation for my association with the former Director of Equal Opportunity, who filed an EEOC charge of discrimination in violation of Title VII of the Civil Rights Act of 1964....";

3. her training duties were removed i.e. she was no longer allowed to teach discrimination classes; and

4. the funding for her position as an Office Specialist was switched from the Clark County general fund to the UMC special fund on account of retaliation as described above and also on account of her race. (SEE EXHIBIT 5)

The Plaintiff makes clear in her deposition that she is claiming retaliation as to both of the decisions in August of 2000 and March of 2001 when the Defendant allegedly declined to reclassify her position and also to the switch in funding. In contrast, the Plaintiff is only claiming disparate treatment race discrimination in regards

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

1  to the switch in the funding of her position.   (SEE DEPO OF BATES, pp. 31-33 AT

2  ATTACHED EXHIBIT 1)

3      Furthermore, in regards to the allegation that her training was taken away, the

4  Plaintiff testified in her deposition that, in fact, her training classes were not taken away

5

6  from her and that Mr. Visconti left it to her discretion whether to continue to teach the

7  classes. (SEE DEPO OF BATES, p.50 AT ATTACHED EXHIBIT 1; and AFFIDAVIT OF

8  VISCONTI, para. 25, AT EXHIBIT 2)

9      Moreover, in regards to her claims for retaliation, the Plaintiff is claiming that her

10  position was not reclassified on two occasions in retaliation against her because of her

11  association with George Cotton, the former Manager of the Equal Opportunity Division

12  within Clark County's Department of Human Resources, who filed a Charge of

13  Discrimination against Clark County with the Nevada Equal Rights Commission and the

14  Equal Employment Opportunity Commission on July 1, 1998.

15

16      Also, in the Plaintiff's Complaint, she refers to a Determination by the Equal

17  Employment Opportunity Commission in which EEOC concluded that there was a

18  preponderance of evidence to establish that the Defendant retaliated against the

19  Plaintiff because of her association with George Cotton.  (SEE EXHIBIT 6) For reasons

20

21  which will be discussed thoroughly below, the Determination letter has little probative

22  value and does not create a genuine issue of fact for purposes of avoiding summary

23  judgment.

24

25

26

27

28

9

# STANDARD OF REVIEW FOR MOTION
# FOR SUMMARY JUDGMENT

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FRCP 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." **Celotex Corp. v. Catrett,** 477 U.S. 317, 325 (1986). Once a moving party has properly supported its motion for summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. **Matsushita Elec. Indus. Co. Zenith Radio,** 475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations or denials of the pleading but must come forward with specific facts showing that there is a genuine issue for trial. **Anderson v. Liberty Lobby, Inc.,** 477 U.S. 242, 256 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. **Id.** at **249-250.** The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. However, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. **Matsushita at 587.**

A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation. **British Airways Board v. Boeing Co.,** 585 F.2d 946, 952 (9th Cir. 1978), **cert. denied, 440 U.S. 981 (1979).** Moreover, if the factual context makes the nonmoving party's claim implausible, that party must come forward with more

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8424 FAX (702) 384-0207

persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial.  **California Architectural Bldg. Products v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) cert. denied, 484 U.S. 1006 (1988)**

## STANDARD OF REVIEW OF CLAIMS OF RETALIATION

Claims for Retaliation in violation of Title VII arise out of the provisions of 42 U.S.C. §2000e-3(a).

42 U.S.C. §2000e-3(a) states in relevant part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment…or…to discriminate against any individual…because he has opposed any practice made an unlawful employment practice…."

To establish a prima facie case of retaliation under Title VII, the Plaintiff must show that :

1.     she was engaging in a protected activity;

2.     that she suffered an adverse employment decision; and

3.     that there was a causal link between the protected activity and the adverse employment decision.  **Tarin v. County of Los Angeles, 123 F.3d 1259 (9th Cir. 1997)**

Once the employee has established a prima facie case for retaliation, the burden of production shifts to the employer to articulate some legitimate nondiscriminatory reasons for the adverse employment decision.  **Id. at 1264**.  If the employer is successful, the Plaintiff must prove by a preponderance of the evidence

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

1 that the proffered reasons are pretexts for retaliation or that a discriminatory reason

2 more likely motivated the employer's action. **Id. at 1264.**

3

4 **THE PLAINTIFF'S CLAIM THAT THE DEFENDANT RETALIATED AGAINST HER**
**BY DECLINING TO RECLASS HER POSITION ON AUGUST 23, 2000 IS BARRED**
5 **BY THE STATUTE OF LIMITATIONS**

6

7 The Plaintiff filed her Charge of Discrimination with the EEOC more than one-

8 hundred and eighty(180) days after she was denied a reclassification on August 23,
9

10 2000 and she did not initially institute proceedings with the Nevada Equal Rights

11 Commission. Accordingly, the Plaintiff's claim for retaliation on account of the

12 Defendant's decision to deny her position reclassification on August 23, 2000 is barred

13 by the statute of limitations as provided in 42 U.S.C. §2000e-5(e)(1).

14 42 U.S.C. §2000e-5(e)(1) states in relevant part:

15

16 "(1)    A charge under this section shall be filed within one hundred and eighty
days after the alleged unlawful employment practice occurred..., except that in a case
17 of an unlawful employment practice with respect to which the person aggrieved has
initially instituted proceedings with a State or local agency with authority to grant or
18 seek relief from such practice or to institute criminal proceedings with respect thereto,
upon receiving notice thereof, such charge shall be filed by or on behalf of the person
19 aggrieved within three hundred days after the alleged unlawful employment practice
occurred...."
20

21 Here, the Plaintiff testified in her deposition that she filed her initial Charge of

22 Discrimination directly with the EEOC on March 30, 2001 and that she did not file

23 anything with the Nevada Equal Rights Commission. (SEE DEPO OF BATES, pp. 26-

24 27 AT ATTACHED EXHIBIT 1)

25 Thus, the Plaintiff had one hundred and eighty days after the alleged unlawful
26

27 employment practice occurred on August 23, 2000 to file her Charge of Discrimination

28 with the EEOC. Since the Plaintiff claims she was denied the position reclassification

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

12

1 | on August 23, 2000, she had until no later than February 23, 2001 to file her Charge of

2 | Discrimination with the EEOC.

3 | However, a review of EXHIBIT 4 reveals that the Plaintiff did not actually file her

4 | Charge of Discrimination with the EEOC until March 30, 2001, a full month after the

5 | deadline for filing the Charge of Discrimination with the EEOC had passed.

6 |

7 | Accordingly, the Court should enter Summary Judgment against the Plaintiff as

8 | to her retaliation claim based upon her allegation that the Defendant denied her a

9 | position reclassification on August 23, 2000.

10 |

11 | **THE PLAINTIFF DID NOT DENY A REQUEST FOR RECLASSIFICATION ON MARCH 14, 2001**

12 |

13 |

14 | The Defendant has searched its files and cannot find any record indicating that a

15 | Position Reclassification Request was filed, in regards to any position held by the

16 | Plaintiff, between February 18, 2000 and March 14, 2001. (SEE AFFIDAVIT OF

17 | VISCONTI, para. 22, AT EXHIBIT 2)

18 | Furthermore, the Defendant cannot find any record of a Position Reclassification

19 | Request filed in regards to any position held by the Plaintiff being denied on or around

20 |

21 | March 14, 2001. (SEE AFFIDAVIT OF VISCONTI, para. 22, AT EXHIBIT 2)

22 | Accordingly, it is the Defendant's belief that it did not deny any reclassification

23 | request in regards to a job being held by the Plaintiff on March 14, 2001 and that the

24 | Court should enter Summary Judgment in favor of the Defendant in regards to this

25 | allegation.

26 |

27 | The nonmoving party may not rest on mere allegations or denials of the pleading

28 | but must come forward with specific facts showing that there is a genuine issue for trial

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

1  in order to avoid the entry of summary judgment.  **Anderson v. Liberty Lobby, Inc.,**

2  **477 U.S. 242, 256 (1986)**

3  If the Plaintiff has something other than her own self-serving statements to prove

4  that the Defendant actually denied a Position Reclassification Request, filed on the

5

6  Plaintiff's behalf, on March 14, 2001, then the Plaintiff must be required to provide such

7  proof in her Opposition to this motion.

8

9  **THE PLAINTIFF'S CLAIM THAT THE DEFENDANT RETALIATED AGAINST**

10  **HER BY TAKING HER TRAINING CLASSES AWAY SHOULD BE**
   **DISMISSED BECAUSE THE PLAINTIFF HAS ADMITTED THAT THE**

11  **TRAINING CLASSES WERE NOT TAKEN AWAY**

12  In regards to the allegation that her training classes were taken away, the

13  Plaintiff testified in her deposition that, in fact, her training classes were not taken away

14  from her and that Mr. Visconti left it to her discretion whether to continue to teach the

15  classes (SEE DEPO OF BATES, p.50 AT ATTACHED EXHIBIT 1; and AFFIDAVIT OF

16

17  VISCONTI, para. 25, AT EXHIBIT 2)

18  Accordingly, the Defendant did not retaliate or discriminate against the Plaintiff

19  by taking her training classes away from her and Summary Judgment should be

20

21  entered in favor of the Defendant.

22

23  **THE PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE**
   **FOR RETALIATION**

24

25  The Plaintiff cannot establish a prima facie case for retaliation because (1) she

26  was not engaged in a protected activity, (2) the denial of the job reclassification in

27  2000, the alleged denial of a job reclassification in 2001and the funding switch were not

28  adverse employment actions and (3) there is no causal link between George Cotton's

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0307

1  Charge of Discrimination and the denial of the job reclassification in 2000, the alleged

2  denial of the job reclassification in 2001 or the funding switch in late 2001.

3

4  ### The Plaintiff Is Not Claiming That She Was Retaliated Against Because
   ### She Engaged In A Protected Activity

5

6  The Plaintiff's cause of action for retaliation should be dismissed because she is

7  not claiming that she was retaliated against because she engaged in a protected

8
9  activity.  The Defendant respectfully requests that this Court follow the Circuit Courts of

10  Appeal which have held that third-party retaliation claims are contrary to the plain

11  language of 42 U.S.C. §2000e-3(a) and do not state a claim upon which relief can be

12  granted.

13  As noted above, the Plaintiff avers in her Complaint that her position was not

14  reclassified and the funding for her position was switched, "in retaliation for my[the

15  Plaintiff's] association with the former Director of Equal Opportunity, who filed an EEOC

16
17  charge of discrimination in violation of Title VII of the Civil Rights Act of 1964...."

18  The Defendant is not aware of any case law which holds that merely associating

19  with another employee constitutes a protected activity.  Here, the only possible

20  protected activity asserted by the Plaintiff is the act of George Cotton filing a Charge of

21  Discrimination in July of 1998.

22
23  Therefore, the Plaintiff is actually attempting to assert a third-party retaliation

24  claim.  She is not claiming to have engaged in protected activity herself but, instead, is

25  claiming that she was retaliated against because George Cotton engaged in a

26  protected activity.

27  The Ninth Circuit Court of Appeals has not taken up the issue of whether a third-

28  party retaliation claim states a claim upon which relief can be granted.

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

1    However, the Third, Fifth and Eighth Circuit Courts of Appeal have all held that

2    third-party retaliation claims, such as the one which the Plaintiff brings before the Court

3    in this case, do not state a claim upon which relief can be granted because they

4    contravene the plain language of 42 U.S.C. §2000e-3(a) which clearly provides that a

5    person may only bring a claim for retaliation if he is claiming that he is being retaliated

6    against for protected activity which, **he himself, engaged in**. See **Fogelman v. Mercy**

7

8    **Hosp., 283 F.3d 561, 568-571 (3rd Cir. 2002); Holt v. JTM Indus., Inc., 89 F. 3d 1224,**

9    **1226-1227 (5th Cir. 1996) and Smith v. Riceland Foods, 151 F.3d 813, 819 (8th Cir.**

10   **1998)**

11   Furthermore, in **Pope v. Motel 6, 121 Nev. Adv. Rep. 31, 114 P.3d 277, 281-**

12   **282 (2005)**, the Nevada Supreme Court acknowledged that 42 U.S.C. §2000e-3(a) was

13   virtually identical to NRS 613.340(1), Nevada's anti-retaliation statute, and then

14   specifically followed the reasoning in **Fogelman**, **Holt**, and **Smith v. Riceland Foods**

15   in holding that third party retaliation claims fail to state a claim upon which relief can be

16   granted.

17

18   The Plaintiff's Complaint states a third-party retaliation claim.  Since third-party

19   retaliation claims fail to state a claim upon which relief can be granted as a matter of

20   law, Summary Judgment should be entered in favor of the Defendant and the Plaintiff's

21   Complaint should be dismissed in its entirety.

22

23   The Defendant firmly believes that no further analysis in this case on the issue

24   of retaliation is necessary.  However, for the sake of prudence, the Defendant will also

25   show why the Plaintiff fails to establish the other elements of a prima facie case and

26   that the Defendant had legitimate nondiscriminatory reasons for declining to reclassify

27

28

16

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0297

1  the Plaintiff's job in 2000 and for switching the funding for the Plaintiff's position in late

2  2001.

### The Denial Of The Job Reclassification In 2000, The Alleged Denial of the Job Reclassification In 2001, And The Switch In Funding Source In Late 2001 Were Not Adverse Employment Decisions

The denial of the reclassification of the Plaintiff's job in 2000 and the alleged

denial of the job reclassification in 2001 were not adverse employment decisions

because the Plaintiff was not turned down for a promotion.  Instead, the Defendant

merely declined to reclassify the Plaintiff's job to Administrative Secretary.

Furthermore, the switch in the funding of the Plaintiff's position from the general

fund to the UMC special fund did not constitute an adverse employment decision

because the Plaintiff was not demoted, given any additional responsibilities or subject

to a decrease in pay or benefits.

Not every employment decision amounts to an adverse employment action.

**Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000)**  Among those

employment decisions which might constitute an adverse employment action are

termination, dissemination of a negative employment reference, issuance of an

undeserved negative performance review and refusal to consider for promotion. **Id.**  By

contrast, the Ninth Circuit has held that declining to hold a job open for an employee

and badmouthing an employee outside the job reference context do not constitute

adverse employment action. **Id. at 928-929**.  Furthermore, the Ninth Circuit Court held

in **Brooks at 929-930** that a negative performance review did not constitute an adverse

employment action when it was subject to modification by the City and the Plaintiff had

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0297

1  declined to fully utilize the appeal process where the negative evaluation could very

2  well have been changed on appeal.

3      Likewise, the Ninth Circuit has held that a transfer with no reduction in

4  compensation did not constitute an adverse employment action.  **Nidds v. Schindler**

5

6  **Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1997)**

7      Also, in **Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465, n.6 (9th Cir.**

8  **1994)**, the Court questioned whether there was any adverse employment action where

9  the Plaintiff was not demoted or put in a worse job or given any additional

10  responsibilities.

11

12      Similarly, the Sixth Circuit has held that no adverse employment action occurred

13  where a temporary transfer did not result in loss of salary or benefits.  **Yates v. Advo**

14  **Corp., 819 F.2d 630, 638 (6th Cir. 1987)**

15      Here, the Plaintiff was not demoted or given additional duties and she did not

16  suffer a loss of salary or benefits as a result of the Position Reclassification Request

17  being denied.

18      Furthermore, the switch of the funding of the Plaintiff's position from general

19  fund to UMC special fund did not constitute an adverse employment decision.

20

21      A Clark County employee whose position is paid for out of the UMC special fund

22  is still considered a full-time Clark County employee with all of the rights and privileges

23  of any other Clark County employee as set forth in the Collective Bargaining

24  Agreement and the Merit Personnel System. (SEE AFFIDAVIT OF VISCONTI, para.

25  28, AT EXHIBIT 2)

26

27      In fact, from the Plaintiff's perspective, there is no difference between working in

28  a position funded out of the UMC special fund or in a position funded out of the Clark

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-9494  FAX (702) 384-0207

1  County General fund. (SEE AFFIDAVIT OF VISCONTI, para. 29, AT EXHIBIT 2) The

2  only substantive difference is that the money to pay a UMC special fund position

3  employee originates from UMC rather than from the Clark County general fund. (SEE

4  AFFIDAVIT OF VISCONTI, para. 29, AT EXHIBIT 2)

5

6      In addition, prior to the funding switch, the Plaintiff was working in a permanent

7  funded position and this remained true after the funding switch. (SEE AFFIDAVIT OF

8  VISCONTI, para. 35, AT EXHIBIT 2) After the funding switch, the Plaintiff remained a

9  full-time Clark County employee with all of the rights and privileges of any other Clark

10  County employee as set forth in the Collective Bargaining Agreement and the Merit

11  Personnel System. (SEE AFFIDAVIT OF VISCONTI, para. 36, AT EXHIBIT 2)

12      Moreover, as a result of the funding switch, Ms. Bates did not suffer any

13  decrease in pay or benefits and her duties were not altered as a result of the funding

14  switch. (SEE AFFIDAVIT OF VISCONTI, para. 37, AT EXHIBIT 2)

15

16      Accordingly, the decision by the Defendant not to reclassify the Plaintiff's Office

17  Specialist position to an Administrative Secretary position was not an adverse

18  employment action. Furthermore, the decision to switch the funding of the Plaintiff's

19  position was, likewise, not an adverse employment decision.

20

21      **There Is No Causal Link Between George Cotton's Filing Of His**
22      **Charge Of Discrimination And The Defendant's Decisions To**
        **Decline To Reclassify The Plaintiff's Job In 2000, To Allegedly Decline**
23      **To Reclassify The Plaintiff's Job In 2001 Or To Switch The Funding**
        **Source Of The Plaintiff's Position In Late 2001**
24

25      The Plaintiff cannot show that there is any causal connection between George

26  Cotton's filing of his Charge of Discrimination in July of 1998 and the Defendant's

27  decisions to decline to reclassify the Plaintiff's job in 2000, to allegedly decline to

28

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8484   FAX (702) 384-0307

1  reclassify her job in 2001 or to switch the funding source of the Plaintiff's position in late
2  2001.

3  To establish causation, the Plaintiff must show by a preponderance of the
4  evidence that engaging in a protected activity was one of the reasons for the adverse
5  employment action and that, but for such activity, the adverse employment action
6
7  would not have occurred. **Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1064-**
8  **1065 (9th Cir. 2002)** While in some cases causation may be inferred from timing alone
9  where an adverse employment action follows on the heels of a protected activity, no
10  causation will be inferred where there is an eighteen(18) month or longer lapse
11  between protected activity and adverse employment action. **Id.**
12  Here, it is undisputed that George Cotton filed his Charge of Discrimination with
13  NERC and EEOC on July 1, 1998. (SEE EXHIBIT 3). Furthermore, the Plaintiff, in her
14  own Amended Charge of Discrimination attached to her Complaint, alleges that she
15  was retaliated against, at the earliest, on August 22, 2000 when the Position
16  Reclassification Request filed on or around January 27, 2000 was denied. As noted
17
18  above, the Plaintiff does not allege any retaliation before August 22, 2000.
19
20  Since there is a lapse of over two years, i.e. 26 months, between the time that
21  George Cotton filed his Charge of Discrimination and the time that the Plaintiff claims
22  she was retaliated against on account of George Cotton filing his Charge of
23  Discrimination, causation may not be inferred pursuant to the Ninth Circuit's holding in
24  **Villiarimo**.
25  Raymond Visconti, Assistant Director in the Department of Human Resources,
26  testifies in his affidavit that he was directly involved with and has comprehensive
27  personal knowledge of (1) the process by which George Cotton attempted to receive
28

20

1   reclassification funding for the Equal Opportunity Division and (2) the process by which

2   George Cotton attempted to obtain a reclassification of the Plaintiff's job in 2000.  (SEE

3   AFFIDAVIT OF VISCONTI, para. 11, AT EXHIBIT 2)

4       Moreover, Mr. Visconti testifies in his affidavit that neither the request for a job

5   reclassification in 2000 nor the decision to switch the funding source for the Plaintiff's

6

7   job in late 2001 happened on account of George Cotton's past or present complaints

8   about Clark County, or for that matter, anyone else's past or present complaints about

9   Clark County. (SEE AFFIDAVIT OF VISCONTI, paras. 21, 38-39 AT EXHIBIT 2)

10      Likewise, Mr. Visconti testifies in his affidavit that he did not approve the switch

11  in the funding source for the Plaintiff's position because of George Cotton's past or

12  present complaints about Clark County, or for that matter, anyone else's past or

13  present complaints about Clark County.  Furthermore, Mr. Visconti testifies that he did

14  not approve the switch in the funding source for the Plaintiff's position on account of

15

16  anyone's race.  (SEE AFFIDAVIT OF VISCONTI, paras. 21, 38-39 AT EXHIBIT 2)

17      As noted above, the Defendant does not believe that it denied a Position

18  Reclassification Request on March 14, 2001.

19

20      There is nothing in the record to establish causation between George Cotton

21  filing his Charge of Discrimination and the Defendant's actions in regard to the Plaintiff

22  in 2000 and 2001 by a preponderance of the evidence.

23      Accordingly, the Plaintiff's Complaint should be dismissed in its entirety.

24

25

26

27

28

**THE DEFENDANT HAD LEGITIMATE NONDISCRIMINATORY REASONS FOR DECLINING TO RECLASSIFY THE PLAINTIFF'S JOB IN 2000 AND FOR SWITCHING THE FUNDING SOURCE FOR THE PLAINTIFF'S POSITION IN 2001**

As set forth above, it should not be necessary for the Defendant to set forth its legitimate nondiscriminatory reasons for its actions in regard to the Plaintiff because the Plaintiff cannot establish a prima facie case for retaliation. Nonetheless, the Defendant sets forth its legitimate nondiscriminatory reasons below.

The fact of the matter is that the reclassification request was turned down by Michael Alastuey in 2000 because he wanted to slow down the growth of salary expense in the Department of Human Resources. The Equal Opportunity Division was not singled out. According to the best of Mr. Visconti's knowledge, no one's job in the Department of Human Resources was approved for reclassification in the summer of 2000. Furthermore, no person from the Justice Court or the Coroner's Office was approved either. Mr. Alastuey's decision to refuse all reclassifications applied to everyone in the Department of Human Resources, not just the Plaintiff or the Equal Opportunity Division. (SEE AFFIDAVIT OF VISCONTI, paras. 19-20 AT EXHIBIT 2)

Mr. Visconti testified in his affidavit that the reclassification request was denied in August of 2000 solely because Assistant County Manager Michael Alastuey wanted to slow down the increase in salary expenses in the Department of Human Resources. (SEE AFFIDAVIT OF VISCONTI, para. 21 AT EXHIBIT 2)

Furthermore, the funding source for the Plaintiff's position was switched in late 2001 by Mr. Visconti solely because he wished to accommodate Ms. King's request for Ms. Dudas to be returned to her division and because he wished to keep an employee who was doing EOD work for UMC in the position funded by UMC which was vacated

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

22

by the transfer of Ms. Dudas.  (SEE AFFIDAVIT OF VISCONTI, para. 38 AT EXHIBIT 2)

Even the Plaintiff, in her deposition, acknowledged the fact that the motive behind the switch in funding source was an attempt by Mr. Visconti to accommodate the desire of Barbara King to have Shawna Dudas returned to her.

In her deposition, the Plaintiff testified:

"Q:      So is this whole thing[the switch in funding source] just a convoluted way to get Shawna[Dudas] back with Barbara King?

A:      In the end that's what it looked like."  (SEE DEPO OF BATES, p. 91 AT ATTACHED EXHIBIT 1)

And:

"Q:      So this[switch in funding source] was Barbara King's decision to bring Shawna[Dudas] back to her, correct?

A:      That's the way I see it, yes, although Raymond[Visconti] says that it was his decision."  (SEE DEPO OF BATES, p. 104 AT ATTACHED EXHIBIT 1)

Also:

"Q:      Do you believe that it was his[Raymond Visconti's]decision to switch your funding?

A:      I think that it was partly his decision, him doing a favor for Barbara King and Don Burnette."  (SEE DEPO OF BATES, p. 112  AT ATTACHED EXHIBIT 1)

The Court's role is to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employer's business judgments.  **Green v. Maricopa County Community College School District,** 265 F.Supp. 2d 1110, 1128 **(D. Ariz. 2003)**

There is nothing in the record to establish that the Defendant's decisions in regard to the Plaintiff were motivated by a desire to retaliate against her for the complaints of George Cotton.

1  Accordingly, the Plaintiff's Complaint should be dismissed.

2

3  ## STANDARD OF REVIEW FOR CLAIMS OF DISPARATE TREATMENT
4  ## RACE DISCRIMINATION

5

6  As noted above, the Plaintiff is only claiming Disparate Treatment Racial

7  Discrimination in regards to her allegation that the funding source for her position was

8  shifted on account of her race. (SEE DEPO OF BATES, pp. 31-33 AT ATTACHED
9

10  EXHIBIT 1)

11  In fact, the Plaintiff did not allege racial discrimination in her initial Charge of

12  Discrimination filed which she filed with the EEOC on March 30, 2001.  Instead, she

13  seems to have added the racial discrimination charge as a mere afterthought to the

14  very end of her Amended Charge of Discrimination which she filed with the EEOC on

15  April 12, 2002. (COMPARE EXHIBITS 4 and 5)

16  Asked to specify the grounds for her charge of racial discrimination, the Plaintiff

17  testified as follows in her deposition:
18

19      "Q:     What happened between March of 2001 and April 12, 2002 to make you
20  believe that you were being discriminated against on account of your race?

21      A:     Because I was removed from the funding source that I'd previously held

22  and switched with a white female." (SEE DEPO OF BATES, p. 31 AT ATTACHED

23  EXHIBIT 1)

24  Under Title VII, an employer may not discriminate against an individual with

25  respect to her terms, conditions or privileges of employment because of her race. **42**

26  **U.S.C. §2000e-2(a)**.
27

28

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

1    The Ninth Circuit has held that the proper legal framework for determining

2    whether a Plaintiff claiming disparate treatment racial discrimination should survive

3    summary judgment is the burden-shifting scheme set out in **McDonnell Douglas Corp.**

4    **v. Green**, 411 U.S. 792, 36 L.Ed. 2d 668, 93 S. Ct. 1817 (1973)  See **Aragon v.**

5    **Republic Silver State Disposal, Inc.**, 292 F.3d 654, 658 (2002)

6

7    Under **McDonnell Douglas**, the Plaintiff must first establish a prima facie case

8    of racial discrimination.  In particular, she must show that (1) she belongs to a

9    protected class, (2) she was qualified for the position, (3) she was subjected to an

10   adverse employment action, and (4) similarly situated non-black individuals were

11   treated more favorably.  **Aragon at 658**.

12   If the Plaintiff succeeds in establishing a prima facie case, the burden of

13   production shifts to the Defendant to articulate a legitimate nondiscriminatory reason

14   for taking the adverse employment action against the Plaintiff.  **Id.** If the Defendant

15   does so, the Plaintiff must demonstrate that the Defendant's articulated reason is a

16   pretext for unlawful discrimination by either directly persuading the Court that a

17   discriminatory reason more likely motivated the employer or indirectly by showing that

18   the employer's explanation is unworthy or credence.  **Aragon at 658-659**. However,

19   the Plaintiff's evidence must be both specific and substantial to overcome the legitimate

20   reasons put forth by the Defendant.  **Aragon at 659**. If the Plaintiff demonstrates

21   pretext, then the burden-shifting framework disappears and the only remaining issue is

22   discrimination vel non. **Id.** While the burden of production may shift, the ultimate burden

23   of persuading the trier of fact that the Defendant intentionally discriminated against the

24   Plaintiff remains at all times with the Plaintiff. **Id.**

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, II Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8484   FAX (702) 384-0257

## THE PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE FOR DISPARATE TREATMENT RACIAL DISCRIMINATION

The Plaintiff cannot establish a prima facie case for disparate treatment racial discrimiation because (1) the funding switch was not an adverse employment action and (2) similarly situated non-black individuals were not treated more favorably.

## THE SWITCH IN THE FUNDING SOURCE FOR THE PLAINTIFF'S JOB POSITION WAS NOT AN ADVERSE EMPLOYMENT ACTION

The Defendant has already addressed the issue that merely switching the funding source for the Plaintiff's position from the general fund to the UMC special fund did not constitute an adverse employment action in the context of the Plaintiff's retaliation claim as set forth above.

To summarize, the switch in funding source did not result in the demotion of the Plaintiff nor the addition of duties.  She also suffered no loss of salary or benefits as a result of the switch in funding source.  She remained a full time employee Clark County employee with all of the rights and privileges of any other Clark County employee as set forth in the Collective Bargaining Agreement and the Merit Personnel System. (SEE AFFIDAVIT OF VISCONTI, para. 36, AT EXHIBIT 2)

Accordingly, as set forth above, the decision by the Defendant to switch the funding of the Plaintiff's position from the general fund to the UMC special fund not an adverse employment decision.

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

## THE PLAINTIFF CANNOT SHOW THAT SIMILARLY SITUATED NON-BLACK EMPLOYEES WERE TREATED MORE FAVORABLY THAN HERSELF

In the context of the switch in funding source, the Plaintiff cannot show that any non-black employees were treated more favorably than herself. The Plaintiff was not passed over for a promotion or a job reclassification. The source of the funding for her job position was simply switched to another fund. She suffered no harm whatsoever. She was not in competition with Ms. Dudas for transfer to the Employee Relations Division so she was not passed over by any non-black employee.

Accordingly, the Plaintiff cannot show that similarly situated non-black employees were treated more favorably than herself in the context of the switch in funding source for her position.

## THE DEFENDANT HAD LEGITIMATE NONDISCRIMINATORY REASONS FOR SWITCHING THE FUNDING SOURCE FOR THE PLAINTIFF'S POSITION

The Defendant's legitimate nondiscriminatory reasons for switching the funding source for the Plaintiff's position from the general fund to the UMC special fund have already been set forth in the context of the Plaintiff's Retaliation claim.

To summarize, there is no evidence in the record whatsoever to support the Plaintiff's allegation that the switch in funding was racially motivated.

The switch in funding was approved by Raymond Visconti solely because he wished to accommodate Ms. King's request for Ms. Dudas to be returned to her division and because he wished to keep an employee who was doing EOD work for UMC in the position funded by UMC which was vacated by the transfer of Ms. Dudas. (SEE AFFIDAVIT OF VISCONTI, para. 38 AT EXHIBIT 2)

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-5454  FAX (702) 384-0207

1   Mr. Visconti would have approved the funding switch in the very same manner if

2   Ms. Dudas had happened to be African-American and the Plaintiff happened to be

3   Caucasian . (SEE AFFIDAVIT OF VISCONTI, para. 39 AT EXHIBIT 2)

4       Accordingly, the Plaintiff's Complaint should be dismissed and Summary

5   Judgment should be entered in favor of the Defendant.

6

7

8       **THE LETTER OF DETERMINATION ISSUED BY THE EEOC**
        **HAS LITTLE PROBATIVE VALUE AND DOES NOT**
9       **CREATE AN ISSUE OF MATERIAL FACT**

10

11

12      In his Complaint(#1), the Plaintiff refers to  a "Determination Letter" issued by

13   the EEOC pertaining to this case.

14      However, a review of the EEOC Determination letter reveals that it is entirely

15   conclusory. (SEE EXHIBIT 6)

16      In **Coleman v. Quaker Oats Co.**, 232 F.3d 1271, 1283-1284 (9th Cir. 2000), the

17   Ninth Circuit Court of Appeals held that a conclusory EEOC Determination Letter has

18   very little probative value and does not create a genuine issue of fact for purposes of

19   avoiding summary judgment.  In **Coleman,** the Court examined an EEOC

20   Determination Letter which simply stated, " The Commission's investigation finds

21   reasonable cause to believe that [Quaker] has violated the[ADEA].  The Commission

22   further finds that employers over the age of 40, as a class, were laid off in violation of

23

24   [ADEA]" **Id.**

25      In holding that the conclusory Letter of Determination would not prevent the

26   entry of summary judgment, the Court noted that it was impossible from the Letter of

27   Determination to know which facts the EEOC considered and how it analyzed them.

28

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8494  FAX (702) 384-0207

1   **Id.** The Court stated that in previous cases it had upheld summary judgment in cases

2   in which the EEOC itself had brought suit. **Id.** The court went on to reason that if the

3   EEOC's suing was insufficient to create a genuine issue of material fact, then, a priori,

4   a conclusory EEOC reasonable cause letter does not create an issue of material fact.

5

6   **Id.**

7   Very recently, the Ninth Circuit reaffirmed the holding in **Coleman** and

8   specifically held that an EEOC reasonable cause determination does not create a

9   genuine issue of material fact as to a discrimination claim under Title VII of the Civil

10  Rights Act of 1964, 42 U.S.C. §§2000e et. seq. **Mondero v. Salt River Project, 400**

11  **F.3d 1207, 1214-1215 (9th Cir. 2005) See also Curtis v. First Watch of Ariz., Inc.,**

12  **2006 U.S. Dist. LEXIS 11823 (D. Ariz. 2006).**

13

14  Here, as in **Coleman**, **Montero** and **Curtis**, the Letter of Determination attached

15  to the Plaintiff's Complaint is completely conclusory.  There is no way to know which

16  facts, if any, the EEOC considered and how the agency conducted its analysis.

17  Accordingly, the Court should simply disregard the EEOC's Letter of

18  Determination attached to the Plaintiff's Complaint.

19

20

21

22

23

24

25

26

27

28

**LAW OFFICES OF**
**GARCIA-MENDOZA & ASSOCIATES**
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
**501 SOUTH SEVENTH STREET**
**LAS VEGAS, NEVADA 89101**
(702) 384-0494  FAX (702) 384-0207

## CONCLUSION

For the reasons set forth above, the Defendant respectfully requests that the Court enter Summary Judgment in its favor and dismiss the Plaintiff's Complaint in its entirety.

DATED this 18th day of April, 2006.

BY: _____

LUTHER SNAVELY, ESQ.
NEVADA BAR NO. 5507
EVA GARCIA-MENDOZA, ESQ.
NEVADA BAR NO. 1779
GARCIA-MENDOZA & SNAVELY
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8484
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that I am an employee of the law firm of GARCIA-MENDOZA & SNAVELY and that on this 18th day of April, 2006, I electronically filed the foregoing MOTION FOR SUMMARY JUDGMENT and that such motion was electronically served upon the following at his last known address by the U.S. District Court of Nevada's electronic filing system:

Richard Segerbloom, Esq.
www.rsegerbloom@lvcm.com

_____
An Employee of Garcia-Mendoza & Snavely, Chtd.

LAW OFFICES OF
GARCIA-MENDOZA & ASSOCIATES
Eva Garcia-Mendoza, Esq.
Luther M. Snavely, III Esq.
501 SOUTH SEVENTH STREET
LAS VEGAS, NEVADA 89101
(702) 384-8484   FAX (702) 384-0207